# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00713-CV

---

### W.C. and Z. B., Appellants

### v.

### Texas Department of Family and Protective Services, Appellee

---

### FROM THE 53RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-18-003971, THE HONORABLE DARLENE BYRNE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Z.B., the mother of R.Y. and A.C., and W.C., the father of A.C., appeal from the trial court's final decree terminating their parental rights to their children.[1]  *See* Tex. Fam. Code § 161.001.  Following a bench trial, the trial court found by clear and convincing evidence that statutory grounds for terminating their parental rights existed and that termination was in the

---

[1] We refer to appellants and their children by their initials only.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.  In this Court's cause number 03-19-00792-CV, Z.B. appealed from the termination of her parental rights to her child, R.H., and this Court affirmed the trial court's final decree.  *See Z.B. v. Texas Dep't of Family & Protective Servs.*, No. 03-19-00792-CV, 2020 Tex. App. LEXIS 801, at *2 (Tex. App.—Austin Jan. 30, 2020, no pet. h.) (mem. op.).  The bench trial in this case also concerned Z.B.'s parental rights to R.H., but the trial court severed the Department's claims concerning R.H. into a different cause number that is the subject of this Court's cause number 03-19-00792-CV.  *See id.*  After the trial court signed decrees terminating parental rights in both cause numbers, the trial court signed an order consolidating the two cause numbers.

children's best interest. *See id.* For the following reasons, we affirm the trial court's final decree.

## Z.B.'s Appeal

The trial court found by clear and convincing evidence that Z.B. constructively abandoned her children, that she failed to comply with the court-ordered services, and that termination of her parental rights was in her children's best interest. *See id.* § 161.001(b)(1)(N), (O), (2).

On appeal, Z.B.'s court-appointed attorney has filed a brief concluding that her appeal is frivolous and without merit. *See Anders v. California*, 386 U.S. 738, 744 (1967); *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied) (applying *Anders* procedure in appeal from termination of parental rights). The brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating why there are no arguable grounds to be advanced on appeal. *See* 386 U.S. at 744; *Taylor*, 160 S.W.3d at 646–47. Z.B.'s counsel has certified to this Court that he provided her with a copy of the *Anders* brief and informed her of her right to examine the appellate record and to file a pro se brief. To date, she has not filed a pro se brief. The Department of Family and Protective Services has filed a waiver of right to file a response to the *Anders* briefs.

Upon receiving an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *Penson v. Ohio*, 488 U.S. 75, 80 (1988). We have reviewed the entire record, including the *Anders* brief submitted on Z.B.'s

2

behalf, and have found nothing that would arguably support her appeal. We agree that her appeal is frivolous and without merit.

## W.C.'s Appeal

### Background

The Texas Department of Family and Protective Services filed its original petition in suit affecting the parent child relationship in June 2018, a few days after Z.B. gave birth to A.C. The Department's stated concerns included Z.B.'s and W.C.'s drug usage, criminal history, and incidents of domestic violence. The Department filed an affidavit by a Child Protective Services investigator in support of its request for extraordinary relief. The investigator averred that the Department had received a referral that Z.B. had tested positive for cocaine and amphetamines in May 2018 during a pre-natal drug screen and for marijuana and benzodiazepines in January 2018. Relevant to W.C.'s appeal, A.C., who was a few days old, was removed and ultimately placed with a non-relative.

The Department initially was unable to locate W.C., but he was appointed counsel and appeared for a status hearing in September 2018. The order from that hearing states that he was present and reviewed and understood the Department's service plan. In the order, the trial court also included orders "to specifically establish the actions necessary for [W.C.] to obtain the return of the child/ren." W.C. was ordered to maintain monthly contact with the caseworker; participate in supervised visits with his child at his request; submit to random drug testing; obtain and maintain stable housing; and participate in services, including participating in and completing a specified Nurturing Parenting Program, Resolution Counseling at Life Works, and a drug and alcohol evaluation through OSAR. Specifics as to the required actions were included

3

in the order such as contact information and locations. In October 2018, the trial court also ordered genetic testing to determine the parentage of A.C. Based on the results from that testing, the trial court signed an order on November 6, 2018, establishing that W.C. was the biological father of A.C.

W.C. failed to comply with the court-ordered services and did not attend any hearings after November 2018 until the bench trial. W.C. was incarcerated starting in November or December 2018. Prior to being incarcerated, W.C. had two supervised visits with his child. On March 20, 2019, W.C. was sentenced to three years in the Institutional Division of the Texas Department of Criminal Justice after he pleaded true to the State's motion to revoke his community supervision. W.C. had been placed on community supervision in February 2017 for the third-degree felony offense of accident involving serious bodily injury. *See* Tex. Transp. Code § 550.021 (requiring operator of vehicle involved in accident generally to stop vehicle, determine if person involved in accident requires aid, and remain at scene until operator has complied with requirements and that failure to comply is third-degree felony if accident resulted in serious bodily injury). The judgment reflects that W.C. violated the conditions of his community supervision by submitting "positive urine specimens for THC on 3/23/18 and benzodiazepines on 12/11/2018" and by failing to report to his supervision officer on multiple occasions between May and December 2018.[2]

The trial court in this case granted an extension of the original dismissal date in June 2019 until January 21, 2020, and the bench trial occurred over several days from August to

---

[2] The State waived W.C.'s other alleged violations, including that W.C. had committed the subsequent criminal offense of assault family violence in December 2018 "by striking [Z.B.] in the face and pushing her to the ground." W.C. testified that the judgment revoking community supervision was the result of a plea deal.

October 2019. The Department's evidence from the first two days was directed to its request to terminate the parents' rights to their children, and the remaining days concerned conservatorship. W.C. remained incarcerated, but he was present for the trial's first two days by way of bench warrant. Z.B. did not appear. On the trial's first day, the Department's witness was the conservatorship caseworker who testified about her contact and communications with W.C., including the services that he was ordered to complete and did not. Prior to the trial's second day, which was a few weeks later, the caseworker, who was facing an investigation of impropriety in another case for allegedly making misrepresentations to the court, resigned from her position. On the trial's second day, the Department's witnesses were the CPS supervisor of the caseworker and the CASA volunteer assigned to the children. The supervisor testified about the circumstances surrounding the caseworker's resignation, its impact on this case, and the supervisor's review of this case. The CASA volunteer testified about W.C.'s child's best interest, explaining why it was CASA's belief that terminating W.C.'s parental rights was in his child's best interest.

W.C. testified on his own behalf. W.C. confirmed that he "took a plea deal" and that he expected to be up for parole in January 2020. He also testified that he loved his child; was learning from his mistakes, "trying to be a better person for [his child]," and "becoming responsible"; and wanted to remain the child's legal father. He further explained his reasons for not following through with court-ordered services. He testified that he "reached out to [the caseworker] as much as [he] could," that he was postponed from his visits until he "was able to prove that [he] was the biological father," that he "really never had, like, the correct guidance on the case," and that the caseworker told him that he "[did not] need to work these types of services." Specifically, he testified that the caseworker told him that he did not have to take drug

5

tests because the caseworker could go off his "probation record, of what [he] was doing on probation." He admitted, however, that he lost contact with the caseworker and did not complete specified services.

After the first two days, the trial court signed an interlocutory decree of termination. The court found by clear and convincing evidence that W.C. constructively abandoned his child, failed to comply with the court-ordered services, and engaged in criminal conduct that resulted in conviction and imprisonment and inability to care for his child for not less than two years from the date of the filing of the petition; and that termination of his parental rights was in his child's best interest. Tex. Fam. Code § 161.001(b)(1)(N), (O), (Q), (2). The trial court thereafter signed a final decree of termination that incorporated the interlocutory decree. W.C.'s appeal followed.

## Analysis

W.C. raises three issues on appeal. W.C. contends that the evidence was legally and factually insufficient to support the trial court's predicate grounds and best interest findings and that the trial court abused its discretion in making its conservatorship finding "where its termination order was based on insufficient evidence."

### Standard of Review

To terminate parental rights, the Department has the burden to prove one of the predicate grounds in section 161.001(b)(1) of the Texas Family Code and that termination is in the best interest of the child. *See id.* § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable standard of proof is the clear and convincing standard. Tex. Fam. Code § 161.206(a); *see In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002) (explaining that due process

6

requires clear and convincing standard of proof in parental termination cases). The clear and convincing standard is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979)); *see* Tex. Fam. Code § 101.007 (defining "clear and convincing evidence"). Although "parental rights are of constitutional magnitude," "it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d at 26.

Legal sufficiency review of the evidence to support a termination finding requires a court to look at all the evidence in the light most favorable to the finding and consider undisputed contrary evidence to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018); *In re J.F.C.*, 96 S.W.3d at 266. "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *In re A.C.*, 560 S.W.3d at 631. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*; *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (explaining that, in factual sufficiency review, court of appeals "should not supplant [fact-finder]'s judgment with its own"); *In re C.H.*, 89 S.W.3d at 25 (describing factual sufficiency review).

**Predicate Grounds**

The trial court found that the Department met its burden as to three predicate grounds. *See* Tex. Fam. Code § 161.001(b)(1)(N), (O), (Q). Because termination of a parent's rights can stand on one statutory ground plus a best interest finding, we limit our review to W.C.'s challenge to the sufficiency of the evidence to support the ground set out in section 161.001(b)(1)(O) of the Family Code. *See id*. § 161.001(b)(1)(O); *In re N.G.,* 577 S.W.3d 230, 232–33 (Tex. 2019) (explaining that only one predicate ground is necessary to support termination of parental rights when there is also best interest finding); *In re A.V.*, 113 S.W.3d at 362 (same).

"[T]o terminate parental rights under section 161.001(b)(1)(O): (1) the parent must have failed to comply with the provisions of a court order, which (2) specifically established the actions necessary for the parent to receive custody of the child from the Department, which serves as the permanent or temporary conservator of the child." *See In re N.G.*, 577 S.W.3d at 237 (citing Tex. Fam. Code § 161.001(b)(1)(O)).[3] "A trial court order referenced by section 161.001(b)(1)(O) is a mandate or directive that establishes some steps or actions necessary for the parent to obtain return of the child who is in the Department's custody." *Id.* at 238. Partial or substantial compliance with the court order is not enough to avoid a termination finding under section 161.001(b)(1)(O). *In re A.L.J.*, No. 01-19-00251-CV, 2019 Tex. App. LEXIS 8534, at *12 (Tex. App.—Houston [1st Dist.] Sept. 24, 2019, no pet.) (mem. op.). A court, however, "may not order termination under Subsection (b)(1)(O) based on

---

[3] W.C. does not challenge the sufficiency of the evidence to support that, at the time of trial, the child had been in the permanent or temporary conservatorship of the Department "for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse of neglect of the child." Tex. Fam. Code § 161.001(b)(1)(O).

8

the failure by the parent to comply with a specific provision of a court order if a parent proves by a preponderance of the evidence that: (1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent." Tex. Fam. Code § 161.001(d).

W.C. acknowledges that he "did not complete his service plan" but argues that he "engaged in the services available to him as they became available" and that "he would be released from [prison] in a matter of months, at which point he would be able to continue completing his services." W.C. testified that he was eligible for parole in January 2020. He also relies on his testimony that the caseworker was unable to stay in contact with him, "despite his best efforts to seek her guidance," and that she provided him with incorrect advice when they did communicate. According to W.C., the caseworker advised him that the drug test requirement could be satisfied "through his probation instead of through his engagement in drug test services." W.C. also focuses on the caseworker's resignation during the pendency of the case and her supervisor's testimony that the caseworker resigned while she was being investigated for allegedly making misrepresentations to the court in another case. He relies on this testimony to support his position that "[a] parent should not be punished for failing to complete a service plan if CPS provides a plan that is impossible to comply with, refuses to explain, and interprets incorrectly."

The supervisor, however, testified that she reviewed the entire file in this case and did not see any impropriety in how the caseworker handled this case. The trial court's order in this case also provides specifics, such as contact information and locations, and the caseworker testified about the specific actions that W.C. was court ordered to complete but failed to do. She

9

testified that he did not complete "OSAR, random drug testing, Resolution Counseling, Nurturing Parenting classes, obtain and maintain stable housing, visits." She further testified that, as to the one drug test request that he did comply with on October 17, 2018, the result of the test was positive for amphetamines. She also confirmed that a referral was sent but that he did not complete the Nurturing Parenting Program and that he visited his child twice out of a possible 15 times during the portion of the case in which he was not incarcerated.

After carefully reviewing the record, we conclude that the trial court was presented with evidence that was legally and factually sufficient to support its finding that W.C. failed to comply with specific, itemized actions contained within the trial court's order that were required to obtain the return of his child. *See In re N.G.*, 577 S.W.3d at 239; *In re S.B.*, No. 07-19-00146-CV, 2019 Tex. App. LEXIS 9695, at *24–29 (Tex. App.—Amarillo Nov. 5, 2019, pet. denied) (mem. op.) (concluding that "the trial court was presented with clear and convincing evidence sufficient to support a finding that [the parent] failed to comply with specific, itemized tasks contained within a court order required to obtain the return of her child").

Further, to the extent that W.C. is relying on section 161.001(d) of the Family Code, the trial court reasonably could have found that W.C. did not meet his burden to show that he made a good faith effort to comply with the court order or that his failure to comply was not attributable to his own fault. *See* Tex. Fam. Code § 161.001(d). Although W.C. argues that he would have been able to complete his services after he was released from prison, the earliest W.C. could have been released from prison according to his own testimony was in January 2020, the same month of this case's extended dismissal date. The evidence also showed that he did not comply with the court-ordered services during the time period that the case was pending and he was not incarcerated. The trial court, as the trier of fact, reasonably could have resolved

10

credibility issues and conflicts in the evidence against W.C. to discredit W.C.'s testimony about the reasons that he did not comply with the court order and to find that W.C.'s own fault was attributed to his failure to comply. *See In re J.J.O.*, 131 S.W.3d 618, 632 (Tex. App.—Fort Worth 2004, no pet.) (explaining that, in bench trial, trial court determines credibility of witnesses and weight to be accorded to their testimony).

Having found the evidence legally and factually sufficient to support the predicate ground set out in section 161.001(b)(1)(O), we overrule W.C.'s first issue and do not address the trial court's findings as to the other two predicate grounds. *See In re N.G.*, 577 S.W.3d at 232–33; *In re A.V.*, 113 S.W.3d at 362.

**Best Interest**

In his second issue, W.C. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of W.C.'s parental rights was in his child's best interest. *See* Tex. Fam. Code § 161.001(b)(2).

Relevant factors in assessing the best interest of a child include: (i) the desires of the child, (ii) the stability of the home or proposed placement, (iii) parental abilities, (iv) the emotional and physical needs of the child now and in the future, (v) the emotional and physical danger to the child now and in the future, (vi) the plans for the child by the individual or agency seeking custody, (vii) the programs available to assist the individuals seeking custody to promote the best interest of the child, (viii) acts or omissions by the parent showing that the parent-child relationship was not proper, and (ix) any excuses for the parent's conduct. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also* Tex. Fam. Code § 263.307 (stating that "prompt and permanent placement of the child in a safe environment is presumed to be in the child's best

11

interest" and listing factors that court should consider "in determining whether the child's parents are willing and able to provide the child with a safe environment"). No one factor is controlling, and evidence presented to satisfy the predicate ground finding may also be probative of the child's best interest. *In re C.H.*, 89 S.W.3d at 27–28; *Pruitt v. Texas Dep't of Family & Protective Servs.*, No. 03-10-00089-CV, 2010 Tex. App. LEXIS 10272, at *22–23 (Tex. App.—Austin Dec. 23, 2010, no pet.) (mem. op.).

At the time of trial, W.C.'s child was just over one year old, had been in the Department's care for all but a few days of his life, was placed in a non-relative home with his siblings, and was doing well in that placement. W.C. testified that he loved his child, wanted to remain his father, and was "trying to be responsible for his [child]," and the CASA volunteer testified that, "according to the notes, the visits [between W.C. and his child] seemed very appropriate." The evidence, however, also showed that W.C. failed to comply with the court-ordered services for the return of his child, visited with his child only twice out of 15 possible times before he was incarcerated, and remained incarcerated at the time of trial. The CASA volunteer testified that W.C. did not have a relationship with the child and agreed that W.C. had been in jail or prison since November or December of 2018.

The exhibits included the March 2019 judgment revoking W.C.'s community supervision and sentencing him to three years' confinement. The judgment reflects that W.C. pleaded true to the State's motion to revoke his community supervision. *See In re D.M.*, 58 S.W.3d 801, 817 (Tex. App.—Fort Worth 2001, no pet.) (considering parent's "inability to maintain lifestyle free from arrests and incarcerations" in best interest determination). The caseworker further testified that W.C. tested positive for amphetamines in October 2018 and that, prior to being incarcerated, W.C. was homeless for most of that time and did not have reliable

12

access to transportation, and "it was iffy" if she could reach him by telephone. *See D.T. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00770-CV, 2019 Tex. App. LEXIS 2797, at *13–16 (Tex. App.—Austin Apr. 9, 2019, no pet.) (mem. op.) (concluding that evidence supported best interest finding and citing in support of conclusion evidence that showed parent's ongoing drug use during case and instability).

"A trial court can measure the future conduct of parents by their recent past conduct but is not required to believe that there has been a lasting change in a parent's attitude since his or her children were taken." *In re J.J.O.*, 131 S.W.3d at 632. Based on W.C.'s actions before and during the pendency of the case, the trial court could have found W.C.'s testimony that he was "trying to be responsible" not credible and concluded that W.C. did not have the stability in his life or capability to parent a toddler in a safe and healthy way. *See id.*; *Rios v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00565-CV, 2012 Tex. App. LEXIS 5724, at *29–32 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.) (concluding evidence was sufficient to support best interest finding when there was evidence that parent was incarcerated after revocation of probation and had "no home—stable or otherwise" even though there was evidence that parent had taken parenting and drug-education classes during his incarceration); *see also M.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00715-CV, 2018 Tex. App. LEXIS 1445, at *8 (Tex. App.—Austin Feb. 23, 2018, no pet.) (mem. op.) ("The need for permanence is the paramount consideration when determining a child's present and future physical and emotional needs."); *In re D.S.A.*, 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.) (concluding that evidence was sufficient to support best interest finding when there was evidence that parent had unstable employment history, violated probation which

resulted in incarceration, had substance abuse issues, failed to visit with child when parent had the opportunity to do so, and failed to comply with service plan).

Viewing the evidence under the legal sufficiency standard of review, we conclude that the trial court could have formed a firm belief or conviction that terminating W.C.'s parental rights was in his child's best interest. *See* Tex. Fam. Code § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 630–31; *In re J.F.C.*, 96 S.W.3d at 266. Further, viewing the evidence under the factual sufficiency standard of review, we conclude that the evidence is such that the trial court reasonably could have formed a firm belief or conviction that termination of W.C.'s parental rights was in his child's best interest. *See In re A.C.*, 560 S.W.3d at 631; *In re C.H.*, 89 S.W.3d at 25. Thus, we conclude that the evidence was legally and factually sufficient to support the trial court's best interest finding. We overrule W.C.'s second issue.

### Conservatorship Finding

In his third issue, W.C. argues that the trial court abused its discretion "in making its conservatorship finding where its termination order was based on insufficient evidence." Because W.C.'s third issue is contingent on this Court sustaining his first or second issue and we have overruled those issues, we overrule W.C.'s third issue.

### Conclusion

For these reasons, we affirm the trial court's final decree terminating the parental rights of W.C. and Z.B.[4]

---

[4] As he acknowledges in the brief, Z.B.'s counsel's obligation to his client has not yet been discharged. *See In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam). If Z.B., after consulting with counsel, desires to file a petition for review, counsel should timely file with the

14

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   March 18, 2020

Texas Supreme Court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27–28.